[No. G009371. Fourth Dist., Div. Three. June 20, 1991.]

LAGUNA AUTO BODY et al., Plaintiffs and Appellants, v. FARMERS INSURANCE EXCHANGE et al., Defendants and Respondents.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rule 976(b), parts II and III are not published as they do not meet the standards for publication.

COUNSEL

Ernest J. Franceschi, Jr., for Plaintiffs and Appellants.

Himes, McDonough & Strickland, and Linda G. Strickland for Defendants and Respondents.

OPINION

**MOORE, J.**—Plaintiffs Laguna Auto Body and Lonnie Reagan (appellants) appeal from the dismissal of their complaint against defendant Farmers Insurance Exchange (respondent).[1] The trial court found appellants' actions preceding the dismissal order were an abuse of the discovery process.

This case was assigned to the superior court's expedited trial program established under the Trial Court Delay Reduction Act of 1986. (Gov. Code, § 68600 et seq.) Appellants contend the court abused its discretion in dismissing their action, claiming the dismissal was under the expedited trial program. However, the action was not dismissed for failure to comply with rules of the expedited trial program, but for wilful misuse of the discovery process under the Civil Discovery Act of 1986. (Code Civ. Proc., § 2016 et seq.)[2]

As will be seen, we hold the rules embodied in the discovery statutes apply to expedited trial program cases, and that courts in that program are not precluded from using dismissal as a sanction in an appropriate case. Moreover, in light of appellants' actions preceding the dismissal order, we find there was no abuse of discretion in dismissing the instant case.

I

FACTS

This appeal arises out of an insurance dispute which arose after appellants' business was destroyed by fire. On March 10, 1989, exactly one year after the fire, appellants filed a complaint for damages, alleging causes of action

---

[1]Respondent's actual name is Truck Insurance Exchange, but it was erroneously sued as Farmers Insurance Exchange. Also named in the original and amended complaints are one of respondent's employees and the lessor of the premises where appellants operated their business.

[2]All statutory references are to the Code of Civil Procedure unless otherwise specified.

for fraud, tortious breach of contract, breach of the implied covenant of good faith and fair dealing, negligence and intentional infliction of emotional distress. The matter was assigned to the expedited trial program.

On June 30, respondent served a first set of form interrogatories, a request for admissions, and a demand for production of documents on appellants. Appellants did not respond. Respondent filed a motion to compel answers to interrogatories which was heard on September 22. Appellants did not file any written opposition to the motion. Also on June 30, respondent noticed the deposition of appellant Reagan for August 16. On that date, neither Reagan nor his counsel appeared.

At the September 22 hearing, appellants' counsel appeared to orally oppose the motion to compel. The court's tentative ruling was to grant the motion in its entirety, order answers to the outstanding discovery, and admit the issues presented in the request for admissions. However, respondent's counsel agreed to compromise and accept late responses to the requests for admissions in exchange for a court order that appellants provide all documents demanded for production and answers to the outstanding interrogatories by September 29 at 5 p.m. Accordingly, the court made such an order.

September 29 came and went without appropriate responses or production by appellants. Appellants' counsel telephoned respondent's counsel on that date and indicated answers would be produced, but that the documents would be produced late because they were so voluminous and difficult to photocopy. Based on appellants' counsel's representation, respondent's counsel once again graciously extended the time for production to October 2.

Included in the interrogatories was the 50.0 series of Judicial Council form interrogatories relating to breach of contract:

"50.2 Was there a breach of any agreement alleged in the pleadings? If so, for each breach describe and give the date of every act or omission that you claim is the breach of the agreement.

"50.3 Was performance of any agreement alleged in the pleadings excused? If so, identify each agreement excused and state why performance was excused.

"50.4 Was any agreement alleged in the pleadings terminated by mutual agreement, release, accord and satisfaction, or novation? If so, identify each agreement terminated and state why it was terminated including dates.

"50.5 Is any agreement alleged in the pleadings unenforceable? If so, identify each unenforceable agreement and state why it is unenforceable.

"50.6 Is any agreement alleged in the pleadings ambiguous? If so, identify each ambiguous agreement and state why it is ambiguous."

In response to each of the interrogatories contained in the 50.0 series, appellants submitted the same objection: "Objection: Oppressive, harassing and burdensome, the information sought seeks plaintiff's [sic] counsel's legal analysis and theories regarding laws, ordinances, safety orders, etc., which are equally available to defendant; the question also invades the attorney's work product privilege . . . ." As noted, the court's order required *answers*, not objections.

October 2 came and went without production of the promised documents. After trying to reach appellants' counsel by telephone for several days, respondent's counsel contacted appellants' counsel's office on October 4 about the promised documents and answers. She was told by appellants' counsel's secretary that appellant Reagan had not provided any documents to appellants' counsel. Respondent's counsel granted appellants until October 6 to provide the answers and documents.

October 6 came and went without any response by appellants. On October 12 the parties appeared for a status conference and on an order to show cause for the parties' failure to submit a joint at-issue memorandum. Each party had filed a unilateral at-issue memorandum. Following the hearing, appellants' counsel showed respondent's counsel documents in the trunk of his car which he represented to be documents he had received from appellant Reagan.[3] Respondent's counsel granted appellants a further extension to October 16 to photocopy and provide the documents and answers to interrogatories.

October 16 passed and appellants failed to provide answers to the interrogatories or documents. Accordingly, on November 1, respondent filed a motion to dismiss or, in the alternative, for sanctions pursuant to sections 2023, subdivision (a)(7), 2030, subdivision (k) and 2031, subdivision (k). Hearing was set for December 15. Respondent did not file any opposition, even though the hearing was continued to January 5.[4] When respondent's

---

[3]This conflicts with appellants' counsel's representation to this court at oral argument that the reason for the failure to produce the necessary documents was because they had been destroyed by fire. Of course, had the documents in fact been destroyed by fire, appellants had only to say so in a verified response in order to properly comply with the Code of Civil Procedure.

[4]The motion was originally set for hearing on December 15. Both parties appeared through counsel. The lower court continued the matter to January 5, 1990, and directed respondents to

counsel returned to her office after the hearing, she noted some of the documents and answers to the interrogatories had been produced. However, the answers were unverified. The answers consisted of four "no" responses and the response that "[d]efendants breached the agreement when they refused to pay sums due and owing to plaintiff for losses caused by the accidental fire which date is known to defendants."

On January 8, the court issued an order granting the motion to dismiss as to all parties. On January 19, appellants filed a motion to reconsider. The trial court heard that motion[5] on March 9, and on March 12 entered an order denying the motion, stating "[t]he Court finds that the plaintiff's [sic] actions preceeding [sic] the dismissal order were an abuse of the discovery process." This appeal followed.

## II, III*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

## IV

### DISMISSAL WAS PROPER UNDER THE DISCOVERY STATUTES

At the outset, it is important to state what this case is *not* about. This is not a situation where appellants suffered the ultimate dismissal sanction for their first transgression or violation of a discovery rule. Even though the court did not impose prior monetary sanctions, the dismissal sanction was the culmination of a history of acts in which appellants obstructed discovery, failed to honor their stipulation with counsel that they would comply, and defied a court order. Not only did appellants fail to respond to discovery, they also failed to oppose respondent's motion to compel or file any opposition to respondent's motion to dismiss the case.

This court has traditionally encouraged trial attorneys to adhere to their professional responsibilities of cooperating, stipulating, and working to-

file a statement complying with California Rules of Court, rule 335. Respondent filed a statement but inadvertently noted the hearing date as January 15. Nonetheless, respondent also timely prepared and served a notice stating the hearing on the motion had been continued to January 5.

[5]Appellants' present counsel appeared at the motion for reconsideration and represented to the court that he was a "new attorney of record." The court stated that if that was true, counsel was "coming in at a bad time." However, present counsel appeared on behalf of appellants' previous counsel at the December 15 dismissal hearing. In the motion to reconsider, he is referred to as "co-counsel" for appellants. And, we also note counsel has the identical business address and the same secretary as appellants' former counsel.

*See footnote, *ante*, page 481.

gether within the law to move cases toward a prompt and fair resolution, consistent with the principle "that justice delayed is justice denied . . . ." (*Laborers' Internat. Union of North America* v. *El Dorado Landscape Co.* (1989) 208 Cal.App.3d 993, 1007 [256 Cal.Rptr. 632].) As former trial judges and as appellate justices, we frown on and condemn the lack of cooperation among attorneys in complying with discovery. The failure or refusal of a party to submit voluntarily to discovery which is inevitable can only be viewed as an attempt to harass the opposition or as a technique to churn attorney's fees. At the same time, we have never approved of attorneys who habitually make unnecessary motions for sanctions, greedily seeking the unnecessary involvement of the court in the discovery process. Accordingly, it is our belief that attorneys who extend professional courtesies and cooperate with opposing counsel should not be punished for their professionalism and patience. We believe equally firmly that attorneys who fail to extend common courtesies to their opposition, who fail to voluntarily comply with proper discovery requests and instead obstruct discovery, who fail to file, where appropriate, written opposition to motion to compel discovery, and who act in defiance of the courts, must be sanctioned appropriately. Such is the case here.

■ The order of the trial court is presumed correct and all intendments and presumptions are indulged to support the order on matters to which the record is silent. It is appellants' burden to affirmatively demonstrate error and, where the evidence is in conflict, this court will not disturb the trial court's findings. (*Young* v. *Rosenthal* (1989) 212 Cal.App.3d 96, 123 [260 Cal.Rptr. 369]; *Ellis* v. *Roshei Corp.* (1983) 143 Cal.App.3d 642, 645, fn. 2 [192 Cal.Rptr. 57].)

Section 2023 provides that dismissal may be used as a sanction when there has been a misuse of the discovery process. The statute states in pertinent part that "(a) Misuses of the discovery process include, but are not limited to, the following: . . . [¶] (4) Failing to respond or to submit to an authorized method of discovery. [¶] (5) Making, without substantial justification, an unmeritorious objection to discovery. [¶] (6) Making an evasive response to discovery. [¶] (7) Disobeying a court order to provide discovery. . . ." In providing punishment for the actions described above, the Legislature has imposed a duty on parties to be forthright and honest in their attempts to reach the merits of the action.

■ Discovery sanctions "should be appropriate to the dereliction, and should not exceed that which is required to protect the interests of the party entitled to but denied discovery." (*Deyo* v. *Kilbourne* (1978) 84 Cal.App.3d 771, 793 [149 Cal.Rptr. 499]; *Young* v. *Rosenthal, supra,* 212 Cal.App.3d at pp. 118-119.) " 'The trial court has a wide discretion in granting discovery

and by the provisions of section 2034 . . . it is granted broad discretionary powers to enforce its orders but its powers are not unlimited. . . . [¶] The sanctions the court may impose are such as are suitable and necessary to enable the party seeking discovery to obtain the objects of the discovery he seeks, but the court may not impose sanctions which are designed not to accomplish the objects of discovery but to impose punishment. [Citations.]' " (*Motown Record Corp.* v. *Superior Court* (1984) 155 Cal.App.3d 482, 489 [202 Cal.Rptr. 227], quoting *Caryl Richards, Inc.* v. *Superior Court* (1961) 188 Cal.App.2d 300, 303-304 [10 Cal.Rptr. 377].)

A prerequisite to the imposition of the dismissal sanction is that the party has wilfully failed to comply with a court order. (*Young* v. *Rosenthal, supra,* 212 Cal.App.3d at p. 114.) Here, the motion to compel answers was granted by the court on September 22, 1989. Appellants contend they ultimately complied on September 29. However, the responses consisted of several objections, not answers.

Section 2030, subdivision (k) provides, in part, that "If a party to whom interrogatories have been directed fails to serve a timely response, that party waives . . . any objection to the interrogatories, including one based on privilege or on the protection for work product under Section 2018." The statutory time limit for response, absent a court order or stipulation to the contrary, is generally 30 days. (§ 2030, subds. (h),(i).) Here, the time from the propounding of interrogatories to the receipt of answers was more than three times that allowed.

On January 5, 1990, appellants changed the responses to unverified answers as follows:

"RESPONSE TO INTERROGATORY NO. 50.2:

"Defendants breached the agreement when they refused to pay sums due and owing to plaintiff for losses caused by the accidental fire which date is known to defendants.

"RESPONSE TO INTERROGATORY NO. 50.3:

"No.

"RESPONSE TO INTERROGATORY NO. 50.4:

"No.

"RESPONSE TO INTERROGATORY NO. 50.5:

"No.

"Response to Interrogatory No. 50.6:

"No."

The simplicity of the final responses belies the assertion that the questions were ever "oppressive, harassing or burdensome." The trial court could reasonably infer appellants were merely obstructing and delaying discovery. As the court noted, the responses finally given were legally invalid, because they were unverified. Appellants were aware of the potential consequences of violating the court's order and, in light of their continued defiance of discovery and the court order, "repeated warnings would have been futile." (*County of El Dorado* v. *Schneider* (1987) 191 Cal.App.3d 1263, 1277 [237 Cal.Rptr. 51]; *Young* v. *Rosenthal, supra*, 212 Cal.App.3d at p. 119.) It would be unjust to require respondent to file another motion to compel further answers when the responses given were patently defective and merely served to further delay discovery. Therefore, appellants' argument that they substantially complied with the court's order is without merit.

Appellants rely on *Midwife* v. *Bernal* (1988) 203 Cal.App.3d 57 [249 Cal.Rptr. 708], where the court reversed the imposition of sanctions on Midwife who had failed to show for his noticed deposition. In imposing sanctions, the court relied solely on the failure to appear and considered no other factors. Based upon the lack of evidence of misconduct or bad faith, the Court of Appeal found there was no showing the violation was willful and, therefore, the sanctions could not stand. (*Id.* at pp. 62-63.) However, *Midwife* v. *Bernal* is distinguishable. Here, the justification for imposing discovery sanctions was based upon not one, but a multitude of violations. Where, as here, the record is replete with instances of delay and failure to comply with a court order, dismissal may be proper. Moreover, appellants had ample opportunity to present their arguments and excuses to the trial court. Instead, they failed to file opposition to the motion to compel or the dismissal motion, leading the trial court and us to presume they had no meritorious arguments. (*Hammond Packing Co.* v. *Arkansas* (1909) 212 U.S. 322 [53 L.Ed. 530, 29 S.Ct. 370].)

Appellants also seek to rely on *Brown* v. *Presley of So. California* (1989) 213 Cal.App.3d 612 [261 Cal.Rptr. 779], in support of the contention that dismissal as a sanction for failure to appear for a deposition is an abuse of discretion. That case is inapposite. In *Brown*, the court held it would be an abuse of discretion to impose a dismissal sanction where counsel appeared on time, and agreed to comply with a court order and pay previously

imposed sanctions. (*Id.* at p. 620.) Here, appellants informed the trial court that either the documents to be produced would be at the courthouse by 11:30 a.m., or counsel would. There was no lack of communication as to what time appellants' counsel would appear. There was simply no appearance and no compliance with the court's order.

Appellants misapprehend the issue here. They urge section 575.2 requires that when only counsel and not the party is responsible for failing to comply with local rules, the court is limited to imposing penalties upon counsel and may not impose sanctions which adversely affect the party's cause of action.[7] But Government Code section 68609, subdivision (d), encourages the use of dismissal as one of the sanctions for failure to comply with local rules promulgated to implement the expedited trial program. At the time of the order of dismissal here, that section provided in pertinent part: "In order to enforce the requirements of an exemplary delay reduction program . . . the judges of the program shall have all the powers to impose sanctions authorized by law, *including the power to dismiss actions* . . . , if it appears that less severe sanctions would not be effective *after taking into account the effect of previous sanctions or previous lack of compliance in the case.* ▆▆▆ *Judges are encouraged to impose sanctions to achieve the purpose of this article.*" (Italics added.)[8]

▆▆▆ We reiterate, however, in this case it was continued wilful violations of the discovery statutes embodied in the Code of Civil Procedure which prompted the court's order dismissing the action. This is not a case where the court assessed sanctions against the attorney or the client for noncompliance with expedited trial program rules or procedures. Accordingly, cases which have discussed noncompliance with those rules or procedures are not controlling. (See e.g., *Cooks* v. *Superior Court* (1990) 224 Cal.App.3d 723, 726 [274 Cal.Rptr. 113]; *Moyal* v. *Lanphear* (1989) 208 Cal.App.3d 491, 499 [256 Cal.Rptr. 296].) No statutory or case law authority proscribes the appropriate use of dismissal as a sanction by a trial judge in the expedited trial program. Clearly, "[t]he fact that this is a 'Fast Track' case does not annul or make inoperative previous statutes and case law." (*Prudential-Bache Securities, Inc.* v. *Superior Court* (1988) 201 Cal.App.3d 924, 925 [247 Cal.Rptr. 477].)

---

[7]Section 575.2 provides, in pertinent part: "(b) It is the intent of the Legislature that if a failure to comply with [expedited trial program] rules is the responsibility of counsel and not of the party, any penalty shall be imposed on counsel and shall not adversely affect the party's cause of action or defense thereto."

[8]The standards set forth in Government Code section 68609, subdivision (d) take precedence over the provisions of section 575.2. (*Intel Corp.* v. *USAir, Inc.* (1991) 228 Cal.App.3d 1559, 1565 [279 Cal.Rptr. 569].

The issue in this case is whether the trial court abused its discretion in dismissing the action in light of the discovery statutes embodied in the Code of Civil Procedure and interpreted by case law. The dissent argues the trial court should have imposed a monetary or issue preclusion sanction. Had the court done so, we would have affirmed the ruling. However, the issue before us is not what sanction we would have imposed, but whether the trial court abused its discretion in ordering dismissal as a sanction. Substantial evidence supports the trial court's conclusion that appellants wilfully obstructed discovery, failed to honor their stipulation with counsel that they would comply with discovery, and defied the court's order to answer all interrogatories and produce all documents by September 29. There was no abuse of discretion in dismissing the action.

The judgment is affirmed. Respondent shall recover its costs on appeal.

Sonenshine, Acting P. J., concurred.

**WALLIN, J.,** Dissenting.—The majority correctly frames the issue in this case as "whether the trial court abused its discretion in dismissing the action in light of the discovery statutes embodied in the Code of Civil Procedure and interpreted by case law." (Maj. opn., *ante*, p. 491.) I respectfully disagree, however, with the majority's conclusion that no abuse occurred.

It has long been accepted that discovery sanctions are not designed " 'to provide a weapon for punishment, forfeiture and the avoidance of a trial on the merits.' " (*Caryl Richards, Inc.* v. *Superior Court* (1961) 188 Cal.App.2d 300, 303 [10 Cal.Rptr. 377], quoting *Crummer* v. *Beeler* (1960) 185 Cal.App.2d 851, 858 [8 Cal.Rptr. 698].) Furthermore, "the sanction should not operate in such a fashion as to put the prevailing party in a better position than he would have had if he had obtained the discovery sought and it had been completely favorable to his cause." (*Deyo* v. *Kilbourne* (1978) 84 Cal.App.3d 771, 793 [149 Cal.Rptr. 499].) And it goes without saying that the ultimate sanction of dismissal is " 'a drastic measure which should be employed with caution.' " (*McArthur* v. *Bockman* (1989) 208 Cal.App.3d 1076, 1080 [256 Cal.Rptr. 522]; *Deyo* v. *Kilbourne, supra,* 84 Cal.App.3d at p. 793.)

When this case is viewed in light of these well-accepted principles and with a little common sense, it becomes clear that the sanction of dismissal was grossly out of proportion to the appellants' conceded abuse of the discovery process. Appellants were served with interrogatories, requests for admission, and a request to produce documents on June 30. After a motion to compel the discovery and a stipulated court order to that effect, appellants

produced their responses to the interrogatories on October 2, over three months later. While five of the questions were not answered as agreed, twenty-seven were answered. Respondents attempted to cooperate with appellants, but in the face of their recalcitrance were forced to notice another motion. At the hearing on January 5, appellants were not present. After learning the requested discovery had still not been produced, the court dismissed the entire action.

I sympathize with respondents' frustration and applaud their counsel's efforts to seek an out-of-court resolution of the problem. And I do not condone appellants' flagrant disregard for the discovery statutes. But the dismissal of the entire action was clearly punitive and excessive when compared to the relatively limited value of the withheld information. The five unanswered questions related to breach of contract; appellants' complaint, although predicated on a contract of insurance, sounded primarily in tort. The complaint clearly pleaded the existence of the contract (in fact, attached a copy) and its breach. The interrogatories (see maj. opn., *ante*, pp. 484-485) had only slight application to the case and the answers were obvious from a mere reading of the complaint. The documents requested consisted of all correspondence and reports pertaining to appellants' loss and support for their claim of lost earnings. An adequate sanction would have been to preclude appellants from using any such documentation at trial.

In any event, the trial court should have attempted monetary sanctions before resorting to dismissal. While appellants' conduct was clearly abusive, it had not reached the point where dismissal was warranted as a first sanction. The slight injury to respondent's trial preparation by the failure to timely provide this relatively insignificant discovery should have resulted in a monetary sanction or, at most, an order precluding presentation of some portion of the claim for damages. The sledgehammer remedy of dismissal should not be used as the first punishment for discovery blunders.

I would reverse the judgment and order a new hearing to consider an appropriate first sanction for failing to make this discovery.

Appellants' petition for review by the Supreme Court was denied September 18, 1991.